# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ARTURO CANEL MARTINEZ,

     Petitioner,

     v.                                      Case No. 2:26-cv-00451-KWR-DLM

HECTOR RIOS, *Warden of the Otero Country Processing Center*,
MARY DE ANDA-YBARRA, *Field Office Director of Enforcement and Removal Operations*,
*El Paso Field Office*,
TODD M. LYONS, *Acting Director of U.S. Immigration and Customs Enforcement*,
SIRCE OWEN, *Acting Director of the Executive Office for Immigration Review*,
KRISTI NOEM, *Secretary of the U.S. Department of Homeland Security*,
PAMELA BONDI, *Attorney General of the U.S. Department of Justice*,
DONALD TRUMP, *President of the United States*, and
DORA CASTRO,

     Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner Arturo Canel Martinez's Verified

Petition for Writ of Habeas Corpus (Doc. 3). Having reviewed the parties' pleadings, exhibits, and

the relevant law, the Court finds that the motion is well-taken, and therefore, is **GRANTED**.

## BACKGROUND

Petitioner, a citizen of Mexico, entered the United States without inspection in 2007. Doc.

¶ 35 (Pet.). For nearly twenty years, he has lived in Iowa and worked as a corral crewman travelling

the Midwest to maintain corrals. *Id.* ¶ 36. Petitioner has two children who are United States

citizens. *Id.* He has no criminal record. *Id.* ¶ 2.

On January 7, 2026, Petitioner and his corral crew were arrested and detained by

Immigration and Customs Enforcement. *Id.* Petitioner has not received notice of the charges

against him or a bond hearing. *Id.* He has been transferred through several detention facilities. *Id.* ¶¶ 42–48. As of the filing of his petition, he is detained at Otero County Processing Center in Chaparral, New Mexico. *Id.* ¶ 48.

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (B.I.A. 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). In light of *Hurtado*, Petitioner has remained in custody without an opportunity to post bond or request conditional release because his detention has been classified as mandatory under § 1225(b)(2)(A).

Petitioner filed his Petition on February 18, 2026. Doc. 3. The following day, Court directed Respondents to answer within twenty-one days. Doc. 5. On March 13, 2026, Respondents answered. Doc. 9.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**DISCUSSION**

Petitioner argues that he is being improperly detained under 8 U.S.C. § 1225(b)(2)(A) and that he is detained under 8 U.S.C. § 1226(a). Doc. 3 ¶ 84. Respondents contend that Petitioner is properly detained under § 1225(b)(2)(A). Doc. 9 at 2. Petitioner also argues that he is being detained in violation of the Due Process Clause, the Administrative Procedure Act, and the Suspension Clause. Doc. 3 ¶¶ 112–43. Respondents assert that reaching these claims is unnecessary to decide the Petition.[1] Doc. 7 at 3 n.5. The Court begins by addressing the statutory claim before turning to the remaining arguments.

I.    **Whether mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a) applies.**

The Court first addresses whether § 1225(b)(2)(A) or § 1226(a) governs Petitioner's detention. Respondents argue that § 1225(b)(2)(A) governs his detention and that he is not entitled to a bond hearing. Doc. 9 at 1. Petitioner contends that his detention is governed by § 1226(a), not § 1225(b)(2)(A). Doc. 3 ¶ 84. After a plain reading of § 1225(b)(2)(A), the Court agrees with Petitioner.

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell*

---

[1]    Respondents incorporate their arguments from *Munoz Teran v. Bondi*, No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026). In *Munoz Teran*, the respondents did not address administrative exhaustion or jurisdiction-stripping provisions. The Court declines to address these arguments *sua sponte*. Additionally, while Respondents' note that administrative exhaustion is a "legal issue presented," they do not expand beyond this bare assertion. This Court will not complete Respondents' arguments for them. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (noting that a court has no obligation to make arguments or perform research on behalf of litigants).

*Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the Immigrant and Nationality Act ("INA"), two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain the arrested noncitizen, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain

4

aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289). For Petitioner's detention to be governed by § 1225(b)(2)(A), the Court must find that Petitioner (1) is an "applicant for admission," (2) who is "seeking admission," and (3) is "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

Petitioner is likely an "applicant for admission" as defined by statute. "[A]pplicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1) "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Here, Petitioner is "present in the United States" as he has lived in the United States for nearly twenty years, and he has not been inspected or admitted. Doc. 3 ¶ 2. Thus, per the statutory definition, Petitioner may be deemed an "applicant for admission" thereby satisfying the first criteria of § 1225(b)(2)(A).

The crux of the § 1225(b)(2)(A) inquiry is whether Petitioner can be deemed "seeking admission." As explained below, after a plain reading of the statute, the Court finds that Petitioner, who has been living in the United States for years, is not "seeking admission."

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he

5

action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Mar. 20, 2026); *see also Entry*, *Black's Law Dictionary* (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary, https://www.oed.com/dictionary/seek_v#23724107 (last visited Mar. 20, 2026). In choosing the present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Mar. 20, 2026). Therefore, the Court finds that a plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States.[2] Section 1225(b)(2)(A) does not apply to noncitizens who, like Petitioner, have

---

[2] The Court understands the ordinary meaning of the word "entry," as used in the statute, to mean the physical act of going into the country. The meaning aligns with how "entry" is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long referred to physically going into the country, regardless of whether the entrant is legally in the United States. *See, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1058) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

8 U.S.C. § 1225(a)(3) indicates that Petitioner is not "seeking admission." Section 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* The word "or" is "almost always disjunctive, that is, the words it connects are 'to be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted). Additionally, the phrase "or otherwise" signals that the phrase "applicants for admission" does not have the same meaning as "seeking admission." Additionally, the use of the phrase "or otherwise" signals that the term "applicants for admission" has a different meaning than the term "seeking admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Mar. 20, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently.").[3] Thus, a plain reading of § 1225(a)(3) demonstrates that Petitioner may be deemed an "applicant for admission" without necessarily being deemed "seeking admission."

Further, Respondents interpretation renders superfluous recent amendments to 8 U.S.C. § 1226(c). Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. It requires detention for a noncitizen who is (1) inadmissible as an alien present in

---

[3] The grammatical placement of "or otherwise" also indicates that "seeking admission" must mean something different than "applicants for admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058910 (last visited Mar. 20, 2026) ("[F]ollowing a noun, adjective, adverb, or verb, to signify a corresponding word, thing, idea, etc., of opposite or alternative meaning" (citation modified)). Here, the phrase "or otherwise" follows a noun, "applicants for admission," signifying that the phrase "seeking admission" is a "corresponding word, thing, idea, etc., of opposite or alternative meaning." *Id.*; *see also* § 1225(a)(3).

the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation of § 1225(b)(2)(A) would require the detention of every noncitizen who is present in the country without being admitted or paroled. Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 297, 303. The *Jennings* Court further noted that § 1226(a) creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at 303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

The Court's statutory reading of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States for an extended period of time is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g.*, *Castañon-Nava*, 161 F.4th at 1061; *see also Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States." (citation modified)); *Buenrostro-Mendez v. Pamela Bondi*, 166 F.4th 494, 510 (5th Cir. 2026) (Douglas, J., dissenting).

Here, Petitioner entered the United States without inspection or admission in 2007. Doc. 3 ¶ 35. He has lived in Iowa working as a corral crewman for nearly twenty years. *Id.* ¶ 36. Respondents do not point to any facts indicating that Petitioner was seeking lawful, physical entry into the United States at the time of his arrest. Rather, Petitioner explains that Respondents arrested him on his way to work on a corral in Wisconsin. *Id.* ¶¶ 34, 41. Applying this statutory reading to the present facts, the Court finds that Petitioner is not "seeking admission" under § 1225(b)(2)(A).

## II.    Immediate release is warranted.

Petitioner requests immediate release. Doc. 3 at 38. Respondents appear to argue that, in the event the Court finds that § 1226(a) applies to Petitioner, a bond hearing rather than immediate release is warranted. Doc. 9 at 3. Petitioner argues that he has not been given a Notice to Appear, a warrant authorizing his arrest, or any other documentation that indicates removal proceedings have been initiated against him. Doc. 3 ¶ 54. Respondents neither address this argument nor provide any documentation refuting the claim.

Petitioner bears the burden of proof to demonstrate that he is entitled to relief or a remedy. *See* 28 U.S.C. § 2241; *see also Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (finding that in a § 2241 proceeding, "[t]he burden of proof was upon the petitioner to sustain these allegations"); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was not 'in custody in violation of the Constitution of laws or treaties of the United States'" under § 2241). But the "ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of

9

establishing facts peculiarly within the knowledge of his adversary." *United States v. N.Y., New Haven & Hartford R.R. Co.*, 355 U.S. 253, 256 n.5 (1957).

Federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court has "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (citation omitted). "Federal habeas corpus practice . . . indicates that a court has broad discretion in conditioning a judgment granting habeas relief." *Id.* Such discretion allows a court to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (noting that § 2243 gives district courts "broad discretion to craft appropriate habeas relief"). Generally, the Court has authority to order release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). It is the "nature of the violation" that "determines the scope of the remedy. *Id.* at 16.

To initiate removal proceedings, written notice "shall be given in person to the alien," or by mail if in person service is not practicable. 8 U.S.C. § 1229(a)(1). Under § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed." Relevant regulations note that "[a]t the time of the issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. §§ 236.1(b)(1), 1236.1(b)(1).

In addition to the Court's finding that Petitioner has been improperly detained pursuant to § 1225(b)(2)(A), the Court finds that Petitioner has been improperly detained without any statutory justification at all. Petitioner appears to have been detained for over two months without any removal proceedings pending against him. At least one district court has recognized that Respondents can cure this error by "eventually commenc[ing] a new removal proceeding" to obtain the authority to detain the petitioner. *See Gonzalez Ochoa v. McCleary*, No. 3:25-cv-00139-SHL-WPK, 2026 WL 235589, at *6 (S.D. Iowa Jan. 2, 2026). Here, Respondents have made no attempt to refute the assertion that Petitioner has not been served a Notice to Appear or any charging documents. It is particularly challenging to prove the absence of information "when the information is more likely in possession of the" opposing party. *United States v. Hebert*, 159 F.4th 777, 786 (10th Cir. 2025) (citing *N.Y., New Haven & Hartford R.R. Co.*, 355 U.S. at 256 n.5). Not only do Respondents fail to provide any documentation, but they fail to acknowledge the argument. Thus, the Court is left with no option but to conclude that Petitioner has been held for over two months without any removal proceedings initiated against him. Petitioner's continued detention violates statutory and regulatory authority because his detention requires "the issuance of the notice to appear." 8 C.F.R. § 1236.1(b)(1); *see also Perlera v. Tsoukaris*, No. 2:25-cv-17122-JKS, 2026 WL 183793, at *2 (D.N.J. Jan. 23, 2026) ("And without a Notice to Appear or initiation of removal proceedings, the government has not identified any statutory basis—under § 1226(a) or otherwise—for Petitioner's continued detention."). Without any statutory authority to detain Petitioner, under §§ 1225 or 1226, Petitioner's continued detention is in violation of the laws of the United States. See 28 U.S.C. § 2241. Therefore, Petitioner must be released.

11

### III.    The Court need not rule on Petitioner's remaining claims.

Petitioner asserts violations of the INA, procedural and substantive due process, the APA, and the Suspension Clause. Doc. 3 ¶¶ 101–43. Because the Court grants habeas relief, the Court need not address Petitioner's additional claims or declaratory relief. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

### CONCLUSION

The Court concludes that Petitioner's detention pending a decision on his removal is governed by § 1226(a), not § 1225(b)(2)(A). Further, the Court concludes that Petitioner is currently being detained absent any statutory authority since a Notice to Appear has not been issued. Accordingly, the Petition (Doc. 3) is granted. Respondents are ordered to release Petitioner within **twenty-four (24) hours** of the entry of this order. The parties are ordered to file a status report within **seven (7) days** of the entry of this order. The Court will enter a separate judgment.[4]

**IT IS THEREFORE ORDERED** that the Petition (Doc. 3) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

---

[4] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).

13

**IT IS FURTHER ORDERED** that Respondents shall release Petitioner within **twenty-four (24) hours** of the entry of this order.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **seven (7) days** of the entry of this order.

       /S/                              
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE